# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JULIE PEREIRA, § § *Plaintiff*, § § v. § § CITY OF LAKELAND, TENNESSEE, § and KATRINA SHIELDS, § § *Defendants*. § | Case No. _____ |

## VERIFIED COMPLAINT

## I. INTRODUCTION

1. Dissatisfied with Joe Biden and Donald Trump—the two major political party candidates who are seeking to be elected President of the United States in 2024—Plaintiff Julie Pereira posted a sign in her front yard. *See* **Ex. 1**, Front Yard Photograph. The political message on Ms. Pereira's yard sign speaks simply and cogently for itself:



2. The City of Lakeland, Tennessee, does not like Ms. Pereira's Political Sign. The City of Lakeland also purports to forbid Ms. Pereira's sign under its Municipal Code.

3. In particular, the City of Lakeland and its Code Enforcement Officer, Defendant Katrina Shields, believe that Ms. Pereira's Political Sign violates City of Lakeland sign regulations that prohibit "statements of an obscene, indecent, or immoral character which would offend public morals or decency" and "statements, words or pictures of an obscene nature."[1]

4. Ms. Pereira's Political Sign is not obscene.

5. To the extent Ms. Pereira's sign is being prohibited for including statements of "indecent, or immoral character which would offend public morals or decency," these regulations are inherently viewpoint-based and cannot withstand constitutional scrutiny. *See Matal v. Tam*, 582 U.S. 218, 220 (2017) ("That is viewpoint discrimination in the sense relevant here: Giving offense is a viewpoint.").

6. The City of Lakeland's Municipal Code—which regulates signs differently based on their communicative content—is also hopelessly unconstitutional apart from its viewpoint-based speech regulations. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 159 (2015) ("The Sign Code identifies various categories of signs based on the type of information they convey, then subjects each category to different restrictions. . . . The Code imposes more stringent restrictions on these signs than it does on signs conveying other messages. We hold that these provisions are content-based regulations of speech that cannot survive strict scrutiny.").

7. For example, under the City of Lakeland's Municipal Code, signs are

---

[1] **Ex. 2**, Codes Enforcement Warning Letter, at 3, 6 (highlights the Defendants').

regulated differently depending on whether they are "works of art with no commercial message," "special event signs for community events," "incidental signs," "window signs," "building marker" signs, "changeable copy signs," "construction signs," "directory signs," "identification signs," "menu board" signs, "model home" signs, "principal ground" signs, "real estate" (but not single-family residential) signs, "residential real estate" signs, "subdivision entry" signs, "temporary signs," "wall signs" (depending on whether they are nonresidential or residential), "temporary residential yard" signs, "suspended signs," or—as here—"political signs."[2]

8. "Political signs"—which the City of Lakeland defines as signs "attracting attention to political candidates or issues"[3]—are subject to especially restrictive treatment. In particular, *unlike any non-political sign*, political signs are only permitted in the City of Lakeland under uniquely restrictive conditions. For example, political signs "shall be limited to not more than one (1) per candidate or issue" except at polling places; "[s]uch signs shall not be placed closer than fifteen feet (15') from the edge of pavement or five feet (5') behind a sidewalk, whichever is greater;" "[n]o such sign shall be erected or displayed earlier than thirty (30) days before the election including early voting to which it relates, nor later than three (3) days following such election;" "[s]uch signs shall not exceed five (5) square feet in area per side and forty-eight inches (48") in height;" and "[s]uch signs erected or maintained not in accordance with the provisions of this subsection shall be the responsibility of the owner of the property upon which the sign is located, shall be deemed a public nuisance, and may be abated, without notice, by such property owner, the candidate, or person advocating the vote described in the sign, or the

---

[2] **Ex. 3**, City of Lakeland Zoning Regulations, at 18–33.
[3] *Id.* at 12.

code enforcement official or his/her designee[.]"[4]

9. Due to the Defendants' credible threat of enforcement against her—including the threat of daily fines and contempt—Ms. Pereira has modified and redacted her Political Sign under protest to dilute and obscure its purportedly offending message:

[5]

10. This coerced modification has satisfied the Defendants. It does not satisfy Ms. Pereira, though, any more than a jacket bearing the words "F*ck the Draft" would have satisfied Paul Cohen. *Cf. Cohen v. California*, 403 U.S. 15, 26 (1971) ("we cannot indulge the facile assumption that one can forbid particular words without also running

---

[4] *Id.* at 23–24.
[5] **Ex. 4**, Redacted Sign.

a substantial risk of suppressing ideas in the process. . . . [T]he State may not, consistently with the First and Fourteenth Amendments, make the simple public display here involved of this single four-letter expletive a criminal offense.").

11. For these reasons, Ms. Pereira has applied to this Court for relief: (1) permitting her to display her Political Sign without redaction; (2) enjoining further viewpoint-based enforcement against her; and (3) enjoining the City of Lakeland's unconstitutional sign regulations in their entirety.

## II.  PARTIES

12. Plaintiff Julie Pereira is a citizen of Tennessee and resident of the City of Lakeland, Tennessee.  Ms. Pereira holds firm views that the two major political party candidates who are seeking to be elected President of the United States in 2024 are unacceptable, and she wants to communicate those views to her community without modifying the potency of her message.  Ms. Pereira may be contacted through counsel.

13. Defendant the City of Lakeland, Tennessee, is an incorporated West Tennessee municipality.  It may be served with process through its City Attorney, Will Patterson, or its Mayor at 10001 Highway 70 Lakeland, TN 38002.

14. Defendant Katrina Shields is a Code Enforcement Officer for the City of Lakeland, Tennessee.  Defendant Shields has initiated enforcement proceedings against Ms. Pereira under the City of Lakeland's "Prohibited signs and devices" regulations because Ms. Pereira displayed "[a] residential yard sign displaying a cuss word."[6] Defendant Katrina Shields may be served with process at her personal residence or wherever she may be found.

---

[6] **Ex. 5**, Enforcement Letter, at 1–2.

### III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

16. As the judicial district where the Defendants reside and where a substantial part of the events or omissions giving rise to the claim occurred, venue is proper here pursuant to 28 U.S.C. § 1391(b)(1)–(2).

### IV. FACTUAL ALLEGATIONS

17. Plaintiff Julie Pereira is dissatisfied with the two major political party candidates who are seeking to be elected President of the United States in 2024.

18. To express her dissatisfaction, Ms. Pereira displayed a political yard sign in her front yard. An authentic copy of the Political Sign that Ms. Pereira displayed is attached to this Complaint as **Exhibit #1**.

19. After displaying her Political Sign, Defendant Katrina Shields sent Ms. Pereira an enforcement warning letter.[7]

20. Defendant Shields' enforcement warning letter asserted that Ms. Pereira's Political Sign violated § 14-405 of the City of Lakeland's Municipal Code.[8]

21. Defendant Shields' enforcement warning letter instructed Ms. Pereira to: "Remove the sign displaying the cuss word or cover the word to where it cannot be viewed from the road and neighboring properties."[9]

22. Defendant Shields' enforcement warning letter instructed that: "Corrective action must be taken within twenty-four (24) hours of receipt of this notification. Failure

---

[7] **Ex. 2**.
[8] *Id.*
[9] *Id.* at 2.

- 6 -

to bring the property into compliance may result in further action to include the possible filing of civil charges with the Lakeland Environmental Court."[10]

23. To avoid fines, but under protest, Ms. Pereira initially complied with the Defendants' demand and redacted her sign as demanded.

24. Afterward, though, Ms. Pereira removed the compelled redaction.

25. In response, Ms. Pereira was met with formal enforcement action.

26. The Defendants filed civil charges against Ms. Pereira after Defendant Shields reported that she "observed the following: A residential yard sign displaying a cuss word. Sign was altered and came into compliance on 1/24/2024. It was altered again on 1/30/2024 to show the entire cuss word."[11]

27. The Defendants' charged violation was based on the Defendants' position that Ms. Pereira's Political Sign violated two provisions of the City of Lakeland's Municipal Code.

28. Defendant Shields highlighted the two relevant provisions of the City of Lakeland's Municipal Code in her initial enforcement letter. The highlighted portions of the City of Lakeland's zoning code that Ms. Pereira was accused of violating are set forth in their authentic and original form in **Exhibit #2**.

29. The first provision of the City of Lakeland's Municipal Code that Ms. Pereira was accused of violating states that prohibited signs include: "Signs which show pictures of human figures, animals or food, and signs which contain characters, cartoons or statements of an obscene, indecent or immoral character which would offend public

---

[10] *Id.*
[11] **Ex. 5** at 2.

morals or decency[.]"[12]

30. The second provision of the City of Lakeland's Municipal Code that Ms. Pereira was accused of violating states that prohibited signs include: "Any sign that exhibits statements, words or pictures of an obscene nature."[13]

31. Ms. Pereira's Political Sign is not obscene.

32. Ms. Pereira was charged with violating the City of Lakeland's Municipal Code specifically because her Political Sign contained a "cuss" word.

33. After Ms. Pereira redacted the "cuss" word on her Political Sign, the Defendants maintained that Ms. Pereira "came into compliance" with the City of Lakeland's Municipal Code.

34. Afterward, when Ms. Pereira removed the redaction on her Political Sign, the Defendants took enforcement action against her because the "cuss" word on her Political Sign was fully viewable.

35. According to the Defendants, displaying the word "fuck" on a yard sign violates the City of Lakeland's Municipal Code.

36. According to the Defendants, the word "fuck" is obscene.

37. According to the Defendants, the word "fuck" is indecent.

38. According to the Defendants, the word "fuck" communicates immoral character.

39. According to the Defendants, the word "fuck" would offend public morals or decency.

40. Ms. Pereira has been fined hundreds of dollars for displaying her Political

---

[12] **Ex. 2** at 4.
[13] *Id.* at 6.

Sign without redaction.

41. Under protest, to avoid further penalties, Ms. Pereira restored the redaction and obscured display of the word "FUCK" on her yard sign, thereby (in the Defendants' view) bringing her sign into compliance with the City of Lakeland's Municipal Code.

42. If Ms. Pereira removes the redaction again, she will be charged with another violation and fined again.

43. If Ms. Pereira removes the redaction again, she has explicitly been threatened with contempt.[14]

44. Under the City of Lakeland's Municipal Code, signs are regulated differently depending on their communicative content.

45. Under the City of Lakeland's Municipal Code, signs are regulated differently depending on whether they contain "works of art with no commercial message," "special event signs for community events," "incidental signs," "window signs," "building marker" signs, "changeable copy signs," "construction signs," "directory signs," "identification signs," "menu board" signs, "model home" signs, "principal ground" signs, "real estate" (but not single-family residential) signs, "residential real estate" signs, "subdivision entry" signs, "temporary signs," "wall signs" (depending on whether they are nonresidential or residential), "temporary residential yard" signs, "suspended signs," or—as here—"political signs."[15]

46. Political signs are singled out for especially restrictive treatment under the City of Lakeland's Municipal Code.

47. Under the City of Lakeland's Municipal Code, political signs are subject to

---

[14] **Ex. 6**, Tr. of Violation Hearing, at 23:13–20.
[15] **Ex. 3** at 18–33.

the following unique restrictions:

(10) <u>Political sign</u>. Political signs shall be allowed provided that:

(a) Such signs shall be limited to not more than one (1) per candidate or issue on any single occupied parcel except polling places on election day where signage may be placed in accordance with election commission guidelines for signage at polling places;

(b) Such signs shall be located on private property, with permission of the property owner;

(c) Such signs shall not be placed closer than fifteen feet (15') from the edge of pavement or five feet (5') behind a sidewalk, whichever is greater;

(d) Such signs shall not be erected or placed in such a manner that they interfere with, obstruct, or confuse or mislead vehicular or pedestrian traffic;

(e) No such sign shall be erected or displayed earlier than thirty (30) days before the election including early voting to which it relates, nor later than three (3) days following such election;

(f) Such signs shall not be located in the public right-of-way or on other public property or on any public utility pole or tree, except within specified proximity of polling places on election day, under the rules established by the Shelby County Board of Election;

(g) No signs will be allowed at polling places earlier than one (1) day before an election or early voting period and must be removed not later than one (1) day after said election or early voting period. For signs placed at polling places no permit or bond will be required, but requirements of all other sections of this chapter shall apply;

(h) Such signs shall not exceed five (5) square feet in area per side and forty-eight inches (48") in height;

(i) Such signs erected or maintained not in accordance with the provisions of this subsection shall be the responsibility of the owner of the property upon which the sign is located, shall be deemed a public nuisance, and may be abated, without notice, by such property owner, the candidate, or person advocating the vote described in the sign, or the code enforcement official or his/her designee[.][16]

---

[16] *Id.* at 23–24.

48. Under the City of Lakeland's Municipal Code, other types of signs need not comply with the above regulations to be permitted.

## V.  CAUSES OF ACTION

<u>CLAIM #1: ABRIDGEMENT OF THE RIGHT OF FREE SPEECH</u>
<u>(AS TO DEFENDANT SHIELDS)</u>

49. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

50. Defendant Shields has taken enforcement action against Ms. Pereira because Ms. Pereira's political sign displayed a "cuss" word: the word "Fuck."

51. According to Defendant Shields, Ms. Pereira's sign complies with the City of Lakeland's Municipal Code if the offending "cuss" word is obscured.

52. If Ms. Pereira removes the redaction depicted in **Exhibit #4,** then Defendant Shields will take further enforcement action against the Plaintiff for displaying her Political Sign, as Ms. Shields has done in the past.

53. The word "Fuck" is not obscene.

54. By taking the position that Ms. Pereira's sign either complies with or violates the City of Lakeland's Municipal Code depending on whether the word "Fuck" is obscured, Defendant Shields is unconstitutionally restricting Ms. Pereira's speech based on its communicative content and its viewpoint.

55. By requiring Ms. Pereira to dilute and obscure the message displayed on her political sign based on its communicative content and its viewpoint, Defendant Shields has abridged Ms. Pereira's right to freedom of speech in contravention of the First Amendment to the United States Constitution, the Fourteenth Amendment, and 42 U.S.C. § 1983.

CLAIM #2: UNCONSTITUTIONAL POLICY AND PRACTICE—OBSCENITY
(AS TO THE CITY OF LAKELAND)

56. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

57. The City of Lakeland has adopted an unconstitutional policy and practice, ratified by policymakers, of treating "cuss" words on signs as if they are obscene.

58. "Cuss" words are not constitutionally obscene.

59. By adopting an unconstitutional policy and practice of treating signs as "obscene" if they display a "cuss" word, the City of Lakeland has abridged Ms. Pereira's right to freedom of speech in contravention of the First Amendment to the United States Constitution, the Fourteenth Amendment, and 42 U.S.C. § 1983.

CLAIM #3: UNCONSTITUTIONAL POLICY AND PRACTICE—VIEWPOINT-BASED REGULATIONS
(AS TO THE CITY OF LAKELAND)

60. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

61. The City of Lakeland has adopted an unconstitutional policy and practice, ratified by policymakers, of regulating "indecent" or "immoral" speech "which would offend public morals or decency."

62. Because these regulations are inherently viewpoint-based, "[t]hat is viewpoint discrimination in the sense relevant here: Giving offense is a viewpoint." *Matal*, 582 U.S. at 220.

63. By adopting an unconstitutional policy and practice of regulating "indecent" or "immoral" speech "which would offend public morals or decency," the City of Lakeland has abridged Ms. Pereira's right to freedom of speech in contravention of the First Amendment to the United States Constitution, the Fourteenth Amendment, and 42 U.S.C.

§ 1983.

### CLAIM #4: UNCONSTITUTIONAL POLICY AND PRACTICE—CONTENT-BASED REGULATIONS (AS TO THE CITY OF LAKELAND)

64. The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

65. The City of Lakeland has adopted an unconstitutional policy and practice, ratified by policymakers, of regulating signs differently based on their communicative content.

66. Political signs, in particular, are subject to uniquely unfavorable treatment under the City of Lakeland's Municipal Code.

67. Under the City of Lakeland's Municipal Code, political signs "shall be limited to not more than one (1) per candidate or issue" except at polling places; "[s]uch signs shall not be placed closer than fifteen feet (15') from the edge of pavement or five feet (5') behind a sidewalk, whichever is greater;" "[n]o such sign shall be erected or displayed earlier than thirty (30) days before the election including early voting to which it relates, nor later than three (3) days following such election;" "[s]uch signs shall not exceed five (5) square feet in area per side and forty-eight inches (48") in height;" and "[s]uch signs erected or maintained not in accordance with the provisions of this subsection shall be the responsibility of the owner of the property upon which the sign is located, shall be deemed a public nuisance, and may be abated, without notice, by such property owner, the candidate, or person advocating the vote described in the sign, or the code enforcement official or his/her designee[.]"

68. No type of sign other than a political sign is subjected to these restrictions under the City of Lakeland's Municipal Code.

69. Signs are regulated differently under the City of Lakeland's Municipal Code based on whether they "attract[] attention to political candidates or issues."

70. Under clearly established U.S. Supreme Court law, the City of Lakeland's Municipal Code cannot satisfy constitutional scrutiny. *See Reed*, 576 U.S. at 159 ("The Sign Code identifies various categories of signs based on the type of information they convey, then subjects each category to different restrictions. . . . The Code imposes more stringent restrictions on these signs than it does on signs conveying other messages. We hold that these provisions are content-based regulations of speech that cannot survive strict scrutiny.").

\* \* \*

71. The Plaintiff's Declaration verifying the above allegations is attached to this Verified Complaint as **Exhibit #7.**

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1. That proper process issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That a preliminary and permanent injunction issue against the City of Lakeland and Defendant Shields, in her official capacity, prohibiting further enforcement against Ms. Pereira for displaying her unredacted political sign;

3. That the Plaintiff be awarded nominal damages against the City of Lakeland;

4. That Plaintiff be awarded reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

5. That the Plaintiff be awarded all further relief to which she is entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
*Melissa Dix, BPR #038535[17]
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
melissa@horwitz.law
(615) 739-2888

Brice M. Timmons #29582
Craig A. Edgington #38205
DONATI LAW, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com
craig@donatilaw.com

*Counsel for Plaintiff*

---

[17] WDTN admission pending.