IN THE MUNICIPAL COURT OF LAKELAND, TENNESSEE

```
                              *
CITY OF LAKELAND,             *
                              *
v.                            *  Case No. T-022124-7
                              *
JOSEPH AND JULIE PEREIRA.     *  February 21, 2024
                              *  Honorable Kim Koratsky
                              *  Presiding
     *  *  *  *  *  *  *  *  *  *  *   *  *
```

# **Violation Hearing**

_____

Transcribed from a digital file by:

Laurie McClain
531-893-1438
lauriemcclainmusic@gmail.com

```
 1                    A P P E A R A N C E S

 2

 3     MS. KATRINA SHIELDS, CODES OFFICER

 4     MS. JULIE PEREIRA, PRO SE

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  And now [unintelligible]  would you

2    call our next case, please?

3          COURT CLERK:  Julie Pereira.

4                    [Ms. Pereira is sworn in

5                    without audio.]

6          THE COURT:  The return visitor.

7          MS. JULIE PEREIRA:  Yes, Your Honor.

8          THE COURT:  You are here for prohibit – prohibited

9    signs and devices.

10          Could you tell me your plea?

11          MS. JULIE PEREIRA:  Not guilty.

12          THE COURT:  Okay.

13          I'll hear first from the City.

14          MS. SHIELDS:  Your Honor, the sign was placed with

15    vulgar language, by the City's standards, in Ms. Pereira's

16    yard.  When she received the notice, she altered the sign.

17    The sign -- the case was closed.

18          At her request for a citation, she removed the

19    tape that had censored the sign.  So she got the citations,

20    and then she [indiscernible].  I have photos, if you

21    would...

22          THE COURT:  They're from last time.

23          Well, let me under -- help me understand.  She had

24    the sign up, was sent the notice, then she put the asterisk,

25    well, over the -- the "U" --

1              MS. SHIELDS:  Yeah.

2              THE COURT:  -- and took it back off.

3              So you had to make a citation -- to issue

4    citation?

5              MS. SHIELDS:  Your Honor, she requested the

6    citation.

7              THE COURT:  Sounds like you got your wish.

8              MS. JULIE PEREIRA:  I wanted my day in court,

9    Your Honor.

10             THE COURT:  Okay.

11             MS. JULIE PEREIRA:  And I requested that.  And I

12   was told that since I had complied they could not issue the

13   citation, I could not have my day in court.

14             THE COURT:  Okay.  Well –

15             MS. JULIE PEREIRA:  The only remedy for that

16   seemed to be to go out of compliance to get the citation

17   issued, which seems kind of silly to me.  But I -- you know,

18   if somebody is requesting their day in court, I believe they

19   should be granted their day in court.

20             The reason why the asterisk is there right now is

21   because I'm not the least bit interested in the $50-a-day

22   fine for noncompliance.

23             THE COURT:  Okay.  To get to court, you have to be

24   cited for something.  And -- and so once she sends out her,

25   what I call a courtesy notice –

1          MS. JULIE PEREIRA:  Uh-huh.

2          THE COURT:  -- it's tantamount to a warning ticket

3     issued by the police officer.  It's a warning that says, you

4     know, "You were speeding, but it was only five miles over,

5     so here's your warning, don't do it again.  You don't have

6     to go to court for those.  You know, you -- it just -- it's

7     not the way the system is built.

8          MS. JULIE PEREIRA:  Uh-huh.

9          THE COURT:  And I -- I fear that you're -- in the

10    parlance of a retail environment, you're at the wrong

11    window.  I -- I -- I handle citations when they come in, but

12    I don't handle warnings.  Warnings are a courtesy that

13    [indiscernible] and -- and Codes is not required -- under

14    most of the ordinances they're not required to give a

15    warning.  But as a courtesy to residents, they give the

16    warning so the resident can come into compliance and not

17    have to come to court, and not be subject to a fine and

18    costs, and all those other things.

19         What -- so my question is what -- what's your end

20    game?  What -- what is it you're looking for?

21         MS. JULIE PEREIRA:  My end game is to get the

22    City of Lakeland to stop violating residents'

23    Constitutionally protected rights.  That is my end game.

24         THE COURT:  Okay.

25         MS. JULIE PEREIRA:  And as long as the City is

1    engaging in violation, I will oppose it.

2            THE COURT:  So are you disputing -- so do you

3    dispute that that word is profane?

4            MS. JULIE PEREIRA:  I dispute that it's a

5    violation.

6            THE COURT:  F-word, the -- I mean –

7            MS. JULIE PEREIRA:  Profane language is not

8    prohibited under the First Amendment.  And the City's sign

9    ordinance is a Constitutional violation.  I alleged that in

10   the previous hearing.

11           I'm happy to make my argument here, to you, today,

12   if you'd like.

13           THE COURT:  The same argument that you made in

14   January?

15           MS. JULIE PEREIRA:  Slightly different, because

16   this is a political sign, which is even more protected under

17   the First Amendment.  And I would renew my argument,

18   especially to the City Manager, that the City's sign

19   ordinance is in violation, and the City should revisit it.

20           THE COURT:  Well, once again, you're not at the

21   right window for that.

22           MS. JULIE PEREIRA:  Understood.

23           THE COURT:  That's -- I can't –

24           MS. JULIE PEREIRA:  But it's on the record.

25           THE COURT:  I -- I basically -- you know, I'm an

1   umpire.  I call balls and strikes.  The -- the Codes officer

2   or a police officer brings a case to me that is a Class C

3   Misdemeanor or less.

4           MS. JULIE PEREIRA:  Uh-huh.

5           THE COURT:  And I call balls and strikes.  You

6   know, I -- the ordinance that's in question -- let's see

7   here –

8           MS. JULIE PEREIRA:  It's 14-405, Prohibited Signs

9   and Devices.

10          THE COURT:  I'm -- I'm -- I'm just trying to page

11  up.  I'm used to having a mouse, and I just got my laptop so

12  it's -- it's easy for me to get to.

13          The ordinance, as a sits, if I recall -- and I'm

14  trying to get – I believe it's written under -- indecent or

15  immoral, "which would offend public morals or decency."

16          That's broad.

17          Then once it's written, it comes to me, and I have

18  to make the decision, is it or isn't it?

19          Let me –

20          MS. JULIE PEREIRA:  It passed the Miller Test.

21          THE COURT:  Let me -- the Miller Test.  Okay.

22          MS. JULIE PEREIRA:  Uh-huh.

23          THE COURT:  Explain that to me.  What's your --

24  what's your argument?

25          MS. JULIE PEREIRA:  The sign is not lascivious or

1  pornographic in nature.  It is not explicit in nature, and

2  it is a political sign.  Therefore, it does not meet the

3  definition of being obscene.

4         THE COURT:  And well, you're saying that "F-'em

5  Both 2024" is a political sign?

6         MS. JULIE PEREIRA:  Yes.  This is an election

7  year.

8         THE COURT:  See that's not clear to me, in looking

9  at that.  I don't know by looking at -- I understand.  I --

10  I -- I -- now that you've explained to me, I understand what

11  you're saying.  But in looking at that it seems to me that

12  it is amiss.

13         Now –

14         MS. JULIE PEREIRA:  So conjugation or an

15  abbreviation for "them."

16         THE COURT:  I see.  No, I get -- I get the "em"

17  part.  I -- I -- I get that part.  And to me, the -- the

18  F-word part is -- is pretty clearly profane to me.

19         But there is a case that -- you can't -- because

20  of the thing you can't see -- I'm looking at my laptop here.

21  Be -- because of this new thing, it's hard to see things --

22  Lichtenstein versus Hargett -- if I'm pronouncing that

23  correctly -- a District Court case out of Tennessee...

24         Well, you're arguing -- when you talk about

25  political speech, the question for the Court then becomes

1    whether it is -- whether what you're talking about is -- is

2    addressing core political speech or whether it's just a

3    political -- a political expression.

4          "Core political speech" -- let' see -- "requires a

5    strict scrutiny analysis which is a higher -- higher burden

6    for the Court to look at.  In -- in that situation, then the

7    result must be narrowly tailored to serve the overriding

8    State interest.  The Meyer-Buckley standard automatically

9    and necessarily requires strict scrutiny when it's

10   applicable only to regulation of core political speech, not

11   just any political expression."

12         It goes on to say – it's not truly core political

13   speech, which I -- since this is a vague, I don't believe it

14   is.  And it's only a rational -- it's called a rational

15   basis test.  It's not strict scrutiny.  Strict scrutiny -- a

16   rational basis is an easier standard -- this Court says is

17   an easier standard to meet, as it requires only a legitimate

18   rather than important State interest.

19         And I think, from what I -- and I explained this

20   to you last time, what the important State interest to me is

21   is your profanity exposed to children.

22         And what was the level of complaint on this sign?

23         MS. SHIELDS:  I had a minimum of ten complaints

24   before and after she altered the sign.  And a statement was

25   dropped off two days ago –

1           THE COURT:  Okay.

2           MS. SHIELDS:  -- by an anonymous source.

3           THE COURT:  I'll hear the statement.

4           MS. SHIELDS:  [Reading]

5               "To Whom it May Concern:

6               I'm writing to show my concerns with the

7       offensive signage located at the above address.

8       This is a beautiful village and neighborhood, and

9       we -- we really want to be happy that we have

10      located to Lakeland.

11              It's my understanding that the residents

12      have been notified of the violation.  However,

13      there continues to be offensive signage displayed

14      in their yard.

15              We are new to the neighborhood, and

16      truly do not understand the motivations regarding

17      this display.  Such a sign seems so strange, given

18      that this family has small children, and children

19      live all around their home.

20              The current sign, much like the holiday

21      decorations, is lit by a spotlight.  It seems that

22      the residents want everyone passing by to see

23      their noncompliant behavior.

24              I believe that these types of displays

25      are not only violation the City Ordinances, but

1       run the risk of devaluing our property and

2       potentially escalating to further acts of

3       defiance.  If this were present during our home

4       search, we would not have purchased property in

5       this area.  I've talked to a few of the neighbors,

6       and there is growing concern of how the situation

7       will be handled.

8             I'm hoping that by writing to you that

9       you will work to solve this issue for our

10      neighborhood.  I would not want this act to start

11      a trend, and others violating City ordinances, as

12      that would not be good for any of us at all.

13            Thanks in advance for your support.

14            Signed, Concerned Neighbor."

15      MS. JULIE PEREIRA:  Just because there are

16  complaints, it doesn't mean that this city gets to violate

17  my Constitutionally protected rights.

18            Now, if you will, respectfully, I would like to

19  read my position, please.

20            THE COURT:  Go ahead.

21            MS. JULIE PEREIRA:  Thank you.

22            The violation notice issued by the City of

23  Lakeland infringed on my First and Fourth Amendment rights,

24  and seeks to censor Constitutionally protected speech.

25            On its face, the City of Lakeland's sign

1   ordinance violations the Constitution.  And the City of

2   Lakeland will not be able to meet their burden of proof that

3   the sign ordinance in question is lawful, and that it does

4   not infringe on one's right to free speech.

5          In Cohen versus California, 1971, Justice John

6   Marshall Harlan, too, reasoned that "While a particular

7   four-letter word being litigated here is perhaps more

8   distasteful than most of its genre, it is nevertheless often

9   true that one man's vulgarity is another man's lyric."

10         Harlan warned that governments might soon seize

11  upon the censorship of particular words as a convenient

12  guise for banning the expression of unpopular views.  Cohen

13  stands for the principle that profane words in themselves

14  cannot be banned under the First Amendment.

15         Given my previous hearing in this Court on a

16  similar matter, I would like to address several arguments I

17  believe the City may make.  The first being FCC Regulations

18  regarding communication.  First and foremost, I'm an

19  individual.  I'm not a business, and this is not commercial

20  communication, nor is it commercial -- communication over

21  the air or on television.

22         The City of Lakeland would be inappropriate to

23  subject my compliance as an individual to the

24  Supreme Court's decision in Federal Communication

25  Commissions versus Pacifica Foundation, 1978.  This decision

1   allowed the government to regulate indecent speech over

2   broadcast medium.  This instant case does not involve

3   broadcast medium, and therefore renders this argument

4   invalid.

5            The second argument I anticipate the City to make

6   would be the Captive Audience Doctrine.  I would

7   respectfully argue that, yet again, the City of Lakeland has

8   made a fallible argument, as the audience in question can

9   reasonably avoid the message, my sign, by utilizing one of

10  the three additional or other entrances and exits to the

11  neighborhood, or simply look elsewhere to avoid it.  The

12  Captive Audience Doctrine applies almost exclusively to

13  auditory speech.

14           The American Jews' president appears to have

15  settled the position that an audience is more likely to be

16  captive to speech which -- which is heard versus seen.  A

17  listener who does not desire to be subjected to a message

18  can typically always avoid the message that is written by

19  turning away and looking elsewhere.

20           The US Supreme Court has struck down prohibitions

21  in a number of cases in regard to nonauditory speech that

22  was deemed to be obscene or controversial because the

23  recipient could turn away and look elsewhere.

24           As a result, the Court has invalidated legislation

25  which makes it a public nuisance for a drive-in movie

1    theater to exhibit films containing nudity visible from a

2    public street, because any offended viewer could easily

3    avert their eyes.  It's the 1975 case of Erznoznik versus

4    the City of Jacksonville.

5         Additional cases include administrative orders

6    prohibiting utilities from using bill inserts to present

7    matters in a political nature or advertising contraceptive

8    products, because the recipient could easily avoid it by,

9    quote, unquote, "simply transferring the bill insert from

10   the envelope to the wastebasket."  That's Consolidated

11   Edison Company versus the Public Service Commission.  It's a

12   1980 court case.

13        And the provision of a State Penal Code under

14   which a protestor was convicted for wearing a jacket with

15   the phrase "Fuck the Draft," because while the mode of

16   expression was being thrust upon unwilling or unsuspecting

17   viewers, it could not be said that the unwilling recipients'

18   substantial privacy interests were being invaded in an

19   essentially intolerable mantle -- manner, especially when it

20   occurred in a public pray -- place.

21        For illustrative purposes, and although it's not a

22   State of Tennessee case, and it's not a Supreme Court case,

23   in People versus -- versus Boomer, which is a 2002 case, the

24   Michigan Court of Appeals reversed the decision on

25   Timothy Joseph Boomer, a well-known con -- in the well-known

1   "Cussing Canoeist" Case.

2          Boomer had been charged with violating the

3   Michigan law that prohibited the use of indecent, immoral,

4   obscene or vulgar and insulting language in the presence of

5   any hearing woman or child.

6          I anticipate that as I will take this case to the

7   higher courts here in Tennessee, I will experience the same

8   final outcome.  And I would implore the City of Lakeland to

9   drop this violation notice and revisit their ordinance that

10  is in violation of residents' First Amendment rights.

11         The City's sign ordinance and violation notice in

12  this case does not pass the Miller Test.  The sign is not

13  lascivious or pornographic in nature, it is not explicit in

14  nature, and it is political in nature.  Therefore, the sign

15  does not meet the definition of being obscene.

16         The strict -- strict scrutiny standard demands

17  that the local government must show that the regulation is

18  designed to serve a compelling government interest and is

19  narrowly tailored to achieve that interest.

20         Supreme Court cases show us time and time again

21  that this is a difficult argument to prove, and in a

22  practice, very few, if any, regulations such as those in

23  this instant case, survive this strict scrutiny review.

24         The First Amendment to The United States

25  Constitution is binding on the State of Tennessee and local

1   governments, via the Fourth Amendment's Due Process Clause,

2   and by Article I, Section 19 of the State of Tennessee

3   Constitution.

4          The City of Lakeland has violated both their sign

5   ordinance and this.  This notice, and a previous decision on

6   this similar matter has created what I am concerned will

7   become a slippery slope of government overreach.  And to

8   that end, I must argue against this erroneous violation and

9   this ordinance.

10          As I previously argued during the

11   January 5th, 2024 hearing on a related matter, a great deal

12   of legal consideration and care must be given when a

13   government desires to regulate the language used on a

14   noncommercial sign.  Content-based regulations regarding

15   protected free -- free speech must show that its regulation

16   is necessary to serve a compelling State interest, and it is

17   narrowly drawn to that end.

18          The principle inquiry in determining content

19   neutrality is whether the government has adopted a

20   regulation of speech because of a disagreement with the

21   message the speech conveys.

22          The City of Lakeland's sign ordinance in this

23   instant case is content-based, rather than content-neutral,

24   because the message conveyed determines whether the speech

25   is subject to restrictions.

1          Courts have ruled that the use of profanity is

2   particularly pronounced and protected speech of political

3   nature.  This protection also extends to the prohibition of

4   profane speech by individuals.  As such, to enforce the

5   City of Lakeland's Municipal Court and sign ordinance, one

6   must read the content of the sign to know whether or not it

7   is political in nature.  Therefore, this is a content-based

8   regulation, and it turns on whether or not the City can show

9   that the regulation is necessary to serve a compelling State

10   interest, and is narrowly drawn to achieve that end.

11          Again, we revert to Cohen versus California.

12          Content based ordinances are subject to strict

13   scrutiny, and presumptively violate the First Amendment.  It

14   is my position, yet again, that the City's ordinances and

15   this violation are unlawful, and they violate the First and

16   the Fourth Amendments.

17          "As a rule, language on a sign cannot be

18   prohibited just because it will offend some viewers."

19   That's Boos versus Barry, 1988.

20          The Court has held that unless fighting words are

21   involved, profane language has First Amendment protections.

22   And that's Chaplinsky versus Hampshire, 1942.

23          Courts have long ruled that governments cannot

24   regulate the content of signs, because doing so could

25   violate the spree – the free speech contained in the

1   First Amendment.  In reviewing government regulations, the

2   Supreme Court applies various tests for the

3   constitutionality of a regulation.

4          As I stated previously, when a regulation is

5   challenged based on its free speech con -- free speech

6   content, the Court applies the strict scrutiny test, which

7   means the regulation must be for a compelling governmental

8   interest, and the regulation must be narrowly tailored to

9   serve that governmental interest.

10          Federal Law under 42 US Code 1983 provides that

11   both a municipal government employee and the employing

12   government body can be held liable for damages when said

13   employee violates Constitutional rights while acting under

14   the color of law and in keeping with the custom, practice,

15   and policy of the employer.

16          Free speech is an absolute right.  And I find it

17   abhorrent that the City of Lakeland is yet again engaging in

18   conduct that violates that right.

19          THE COURT:  Well, first of all, I'm not holding

20   you, and I didn't last time, to FCC Regulations.  I looked

21   to those for guidance on how to do what I do.  This isn't

22   something I handle every day.  I'm more accustomed to

23   dealing with, as you saw from the earlier cases, "is the

24   truck in your yard" and "is your grass -- is your grass too

25   tall?"

1          So I -- I have to look to something to figure out

2  how to deal with this.  And I did not hold you to the

3  FCC Regulations.  I simply looked at them to see, how did

4  they deal with this, because they deal with this a lot more

5  than other entities do.  And they can be instructive in --

6  in what -- what Courts call "take judicial notice" of

7  things.

8          I explained a little earlier, the only time strict

9  scrutiny applies is if it had -- goes towards core political

10  speech.  I think your sign is too vague to be any --

11  anywhere certain of what -- who "both" are.  So, you know,

12  it falls -- doesn't require strict scrutiny analysis, it

13  requires a rational basis analysis.  And that's a much -- as

14  I explained to you, it's a much lower standard.

15          When did the sign go up?  When did you put it up?

16          MS. JULIE PEREIRA:  I believe that was

17  January 17th.

18          THE COURT:  And -- so it was up in -- she showed

19  me two photographs.  I don't know whether she showed those

20  to you.  But I -- would you show those to the -- the

21  defendant, and we'll make sure that we're all on the same

22  page.

23          Is that -- is that an actual representation of

24  what the sign looked like –

25          MS. JULIE PEREIRA:  Yes, Your Honor.

1              THE COURT:  -- before and after?

2              MS. JULIE PEREIRA:  Yes.

3              THE COURT:  Okay.

4              MS. JULIE PEREIRA:  Both of those are accurate.

5              THE COURT:  So January –

6              MS. JULIE PEREIRA:  The one in color is the

7    current

8              MS. SHIELDS:  Correct.

9              MS. JULIE PEREIRA:  -- as of yesterday.

10             THE COURT:  Okay.  Is -- from the City's

11   perspective, Officer Shields, is the asterisk over one

12   letter sufficient to fix the compliance...

13             MS. SHIELDS:  Your Honor, the City is not trying

14   to censor speech [unintelligible] vulgar language from...

15             THE COURT:  Got you.  And that -- as we explained,

16   that falls under the Rational Basis Test, is a legitimate

17   means, and that it's a much lower standard than your strict

18   scrutiny that you talk about.

19             Sign went up on January 17th.  And when did you

20   cover the –

21             MS. JULIE PEREIRA:  The day I received the

22   warning, the same day.

23             THE COURT:  Posted it when?

24             MS. SHIELDS:  The 22nd.

25             THE COURT:  Then went up on the 17th, it was up as

1  it was in its original state on the 22nd when the property

2  was posted.  And that's when you covered it?

3          MS. JULIE PEREIRA:  Correct.  I covered it the

4  same day I got the warning.

5          THE COURT:  Okay.  And then uncovered it the

6  next –

7          MS. JULIE PEREIRA:  Yes.

8          MS. SHIELDS:  I believe -- this one is issued on

9  January 30th.

10          THE COURT:  Put it back up after you got the

11  citation –

12          MS. JULIE PEREIRA:  Correct.

13          THE COURT:  -- or the 22nd, the same day it was --

14  well, you would have re-covered it after you got your

15  citation on the 22nd.  If –

16          MS. JULIE PEREIRA:  No, I think –

17          MS. SHIELDS: The 30th.

18          MS. JULIE PEREIRA:  -- the 30th.

19          MS. SHIELDS:  She hadn't covered it, only for the

20  dates the citations were issued.

21          THE COURT:  Okay.  So you posted the property on

22  the 22nd.

23          MS. SHIELDS:  Then compliance had been given.  The

24  case was closed.  And then discussed on the 30th.  She

25  removed the tape to receive the citation.

1           THE COURT:  Uncovered it on the 30th, but then

2    covered it back up the same day.

3           MS. JULIE PEREIRA:  Correct.

4           THE COURT:  I see where we have a different

5    outcome from last time?

6           MS. JULIE PEREIRA:  Oh, I -- I certainly expected

7    this.  I -- I'll ask the Higher Court to potentially combine

8    the cases, if they will.

9           THE COURT:  The ordinance contains language that

10   should they have a continuing violation, it's a new

11   violation.  Put the sign up on the 17th in its original

12   iteration, the 18th - 18th, 19th, 20th, 21, 22 -- six days

13   was up.  Sound about right?

14          MS. JULIE PEREIRA:  I -- there was no violation,

15   so I -- I can't answer that question for you, Your Honor.

16          THE COURT:  The sign was up without the -- the

17   painters tape over it for the 17th, 18th, 19th, 20th, 21,

18   and 22?

19          MS. JULIE PEREIRA:  Until the notice was given on

20   the -- what was it, the 22nd?

21          MS. SHIELDS:  Notice was -- correct.

22          THE COURT:  That's, by my count, six days that it

23   was up without the tape over it.

24          MS. JULIE PEREIRA:  You count the day it was put

25   up?

 1              THE COURT:  The day it was put up, I would count.
 2    I mean, that's when the sign went up.  Right?
 3              MS. JULIE PEREIRA:  A full day?  On a full day.
 4    Do the Courts count the date?
 5              THE COURT:  Every day of the violation is a new
 6    day -- every new day is a new -
 7              MS. JULIE PEREIRA:  Okay.  I'll make it six,
 8    Your Honor.
 9              THE COURT:  Well, were you here when I had the
10    conversation with one of the previous defendants about
11    contempt of Court and how that works?
12              MS. JULIE PEREIRA:  Yes, Your Honor.
13              THE COURT:  As a Shelby County Municipal Court, I
14    have two things available to me.  One is to fine, and the
15    second is to jail.  The order that I issued last time
16    contains the same language that I read to Mr. Connelly
17    [phonetic]:  Maintain the property not in violation of
18    ordinances or orders.
19              Not inclined today to hold you in contempt, but I
20    will warn you, I don't want to see you back in here.
21              MS. JULIE PEREIRA:  So Your Honor, I do not want
22    to see the City of Lakeland continue to violate my
23    First Amendment rights.
24              THE COURT:  I'm going to fine you for six days in
25    violation of the sign ordinance for $50 a day, plus Court

1   costs and fees.  I'll give you a ticket that you can take to

2   the front window to pay.  Do you need additional time?

3              MS. JULIE PEREIRA:  I'll bring a check back later

4   today.

5              THE COURT:  Okay.

6              Now, you know, don't violate the sign ordinance

7   again.

8              MS. JULIE PEREIRA:  Your Honor, I did not spend

9   six years defending my country to live in the City of

10  Lakeland and have the City of Lakeland violate my First

11  Amendment and Constitutional rights.  That is not what I

12  fought for.

13             So I will continue to comply with the Constitution

14  while the City of Lakeland continues to violate it.  The

15  ACLU is invest -- interested in this case.  The local news

16  stations are interested in this case.  And I will take it

17  there at this point, because this is ridiculous.

18             The City has been put on notice about how every

19  single step they have taken is a Constitutional violation.

20  And the City wants to continue to make irrational and

21  invalid arguments.

22             So just like the city is going to do what they

23  need to do, Your Honor, respectfully, I'm going to do what I

24  need to do, because I will not tolerate this level of

25  tyranny from the government.  It starts small and it rolls

1  downhill.

2          THE COURT:  I understand your point, ma'am.

3  You'll receive my order in the mail.  We'll have a card for

4  you that you can take to the front window.

5          MS. JULIE PEREIRA:  Thank you.

6          THE COURT:  Anything further for the Court?

7          Court is adjourned.

8                          [End of recording.]

9                    *   *   *   *   *   *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    STATE OF TENNESSEE  )
                        )
2    COUNTY OF DAVIDSON  )

3              I, Laurie McClain, Transcriber,
4
              DO HEREBY CERTIFY that the foregoing proceedings
5
     were transcribed by me from a digital file, and the
6
     foregoing proceedings constitute a true and correct
7
     transcript of said recording, to the best of my ability.
8
              I FURTHER CERTIFY I am not a relative or employee
9
     or attorney or counsel of any of the parties hereto, nor a
10
     relative or employee of such attorney or counsel, nor do I
11
     have any interest in the outcome or events of this action.
12

13   Date 06/05/2024                    _Laurie McClain_
14                                      Laurie McClain
                                        Transcriber
15

16

17

18

19

20

21

22

23

24

25

# Index

## A

abbreviation, 8
abhorrent, 18
ability, 26
above, 10
accurate, 20
accustomed, 18
ACLU, 24
act, 11
action, 26
acts, 11
Additional, 14
additional, 13, 24
addressing, 9
adjourned, 25
administrative, 14
adopted, 16
advance, 11
advertising, 14
ahead, 11
alleged, 6
allowed, 13
altered, 3, 9
am, 16, 25-26
Amendment, 6, 11-12, 15-18, 23-24
Amendments, 17
American, 13
amiss, 8
an, 6, 8-10, 12-14, 18-19

analysis, 9, 19
anonymous, 10
anticipate, 13, 15
anywhere, 19
Appeals, 14
appears, 13
applicable, 9
applies, 13, 18-19
are, 3, 5-6, 10-11, 17, 19-20, 24
argued, 16
arguing, 8
arguments, 12, 24
Article, 16
asterisk, 3-4, 20
attorney, 26
Audience, 13
audience, 13
audio, 3
auditory, 13
automatically, 9
avert, 14
avoid, 13-14

## B

balls, 7
banned, 12
banning, 12

■ **Index** ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

Barry, 17
based, 16-18
basically, 6
becomes, 8
been, 10, 15, 21, 24
being, 8, 12, 14-15
binding, 15
Boomer, 14-15
Boos, 17
brings, 7
broad, 7
broadcast, 13
Buckley, 9
built, 5
burden, 9, 12

# C
━━━━━━━━━━━━━━━━━━━━━━━

California, 12, 17
called, 9
cannot, 12, 17
Canoeist, 15
Captive, 13
captive, 13
cases, 13-15, 18, 22
censor, 11, 20
censored, 3
censorship, 12
certainly, 22
CERTIFY, 26
challenged, 18
Chaplinsky, 17
charged, 15
children, 9-10
citation, 3-4, 21
citations, 3, 5, 21
cited, 4
Clause, 16
clearly, 8
CLERK, 3
closed, 3, 21
Code, 14, 18
CODES, 2
Codes, 5, 7
Cohen, 12, 17
com, 1

combine, 22
comes, 7
commercial, 12
Commission, 14
Commissions, 12
Communication, 12
communication, 12
compelling, 15-18
complaint, 9
complaints, 9, 11
compliance, 4-5, 12, 20-21
complied, 4
comply, 24
con, 14, 18
Concerned, 11
concerned, 16
concerns, 10
conduct, 18
conjugation, 8
Connelly, 23
consideration, 16
Consolidated, 14
constitute, 26
Constitution, 12, 15-16, 24
Constitutional, 6, 18, 24
constitutionality, 18
Constitutionally, 5, 11
contained, 17
containing, 14
contains, 22-23
contempt, 23
Content, 16-17
content, 16-18
continues, 10, 24
continuing, 22
contraceptive, 14
controversial, 13
convenient, 12
conversation, 23
conveyed, 16
conveys, 16
convicted, 14
Core, 9
core, 9, 19
correctly, 8
costs, 5, 24
counsel, 26
courtesy, 4-5
Courts, 17, 19, 23
courts, 15

■ **Index** ────────────────────────────────

covered, 21-22
created, 16
Cussing, 15
custom, 18

dropped, 9

# E
─────────────────────────────

earlier, 18-19
easier, 9
easily, 14
Edison, 14
election, 8
elsewhere, 13
em, 8
employee, 18, 26
employer, 18
employing, 18
enforce, 17
engaging, 6, 18
entities, 19
entrances, 13
envelope, 14
erroneous, 16
Erznoznik, 14
escalating, 11
especially, 6, 14
essentially, 14
events, 26
exclusively, 13
exhibit, 14
exits, 13
expected, 22
explained, 8-9, 19-20
explicit, 8, 15
exposed, 9
expression, 9, 12, 14
extends, 17
eyes, 14

# D
─────────────────────────────

damages, 18
dates, 21
DAVIDSON, 26
days, 9, 22-23
dealing, 18
decency, 7
decorations, 10
deemed, 13
defendant, 19
defendants, 23
defending, 24
defiance, 11
definition, 8, 15
demands, 15
designed, 15
desire, 13
desires, 16
determines, 16
determining, 16
devaluing, 11
Devices, 7
devices, 3
did, 19-20, 24
different, 6, 22
digital, 1, 26
disagreement, 16
discussed, 21
display, 10
displayed, 10
displays, 10
dispute, 6
disputing, 6
distasteful, 12
Doctrine, 13
does, 8, 12-13, 15
doing, 17
downhill, 25
Draft, 14
drawn, 16-17

# F
─────────────────────────────

fallible, 13
falls, 19-20
FCC, 12, 18-19

iii

## ■ Index ────────────────────────────────

February, 1
Federal, 12, 18
fees, 24
fighting, 17
films, 14
fix, 20
foregoing, 26
foremost, 12
fought, 24
Foundation, 12
Fourth, 11, 16-17
Fuck, 14

# G
─────────────────

genre, 12
gets, 11
gmail, 1
going, 23-24
Got, 20
got, 3-4, 7, 21
government, 13, 15-16, 18, 24
governmental, 18
governments, 12, 16-17
granted, 4
grass, 18
growing, 11
guidance, 18
guilty, 3
guise, 12

# H
─────────────────

had, 3-4, 9, 15, 19, 21, 23
hadn, 21
Hampshire, 17
handle, 5, 18
handled, 11
Hargett, 8
Harlan, 12
having, 7

heard, 13
HEREBY, 26
hereto, 26
Higher, 22
higher, 9, 15
holding, 18
Honor, 3-4, 19-20, 22-24
Honorable, 1
hoping, 11
huh, 5, 7

# I
─────────────────

illustrative, 14
immoral, 7, 15
implore, 15
inappropriate, 12
inclined, 23
indecent, 7, 13, 15
indiscernible, 3, 5
individuals, 17
infringe, 12
infringed, 11
inquiry, 16
insert, 14
inserts, 14
instant, 13, 15-16
instructive, 19
insulting, 15
interested, 4, 24
interests, 14
intolerable, 14
invaded, 14
invalid, 13, 24
invalidated, 13
involved, 17
irrational, 24
Is, 19-20
is, 3-21, 23-25
issued, 4-5, 11, 21, 23
iteration, 22

iv

■ Index ──────────────────────────────

## J

jacket, 14
Jacksonville, 14
jail, 23
January, 6, 16, 19-21
Jews, 13
John, 12
JOSEPH, 1
Joseph, 14
judicial, 19
JULIE, 1-8, 11, 19-25
Julie, 3
Justice, 12

## K

KATRINA, 2
keeping, 18
Kim, 1
known, 14
Koratsky, 1

## L

LAKELAND, 1
Lakeland, 2-26
laptop, 7-8
lascivious, 7, 15
later, 24
Laurie, 1-26
lauriemcclainmusic, 1
lawful, 12
legal, 16
legislation, 13
legitimate, 9, 20
liable, 18
Lichtenstein, 8

listener, 13
lit, 10
litigated, 12
ll, 19, 25
located, 10
looked, 18-19
looking, 5, 8, 13
lower, 19-20
lyric, 12

## M

ma, 25
made, 6, 13
mail, 25
Maintain, 23
makes, 13
manner, 14
mantle, 14
Marshall, 12
matters, 14
McClain, 1-26
means, 18, 20
medium, 13
message, 13, 16
Meyer, 9
Michigan, 14-15
miles, 5
Miller, 7, 15
minimum, 9
Misdemeanor, 7
mode, 14
morals, 7
motivations, 10
mouse, 7
movie, 13
Mr, 23
MS, 2-11, 19-25
Ms, 3
MUNICIPAL, 1
Municipal, 17, 23
municipal, 18

## ■ Index

# N

narrowly, 9, 15-18
nd, 20-22
necessarily, 9
Neighbor, 11
neighborhood, 10-11, 13
neighbors, 11
neutral, 16
neutrality, 16
nevertheless, 12
nonauditory, 13
noncommercial, 16
noncompliance, 4
noncompliant, 10
nor, 12, 26
notified, 10
nudity, 14
nuisance, 13

# O

obscene, 8, 13, 15
occurred, 14
offend, 7, 17
offended, 14
offensive, 10
OFFICER, 2
Officer, 20
officer, 5, 7
Oh, 22
orders, 14, 23
ordinance, 6-7, 12, 15-17, 22-24
Ordinances, 10
ordinances, 5, 11, 17, 23
outcome, 15, 22, 26
overreach, 16
overriding, 9

# P

Pacifica, 12
painters, 22
parlance, 5
particularly, 17
parties, 26
passed, 7
passing, 10
Penal, 14
Pereari, 2-26
PEREIRA, 1-8, 11, 19-25
Pereira, 3
perspective, 20
phonetic, 23
photographs, 19
photos, 3
phrase, 14
placed, 3
plea, 3
pornographic, 8, 15
Posted, 20
posted, 21
potentially, 11, 22
pray, 14
presence, 15
president, 13
Presiding, 1
presumptively, 17
previously, 16, 18
principle, 12, 16
privacy, 14
PRO, 2
proceedings, 26
products, 14
Profane, 6
profane, 6, 8, 12, 17
profanity, 9, 17
prohibit, 3
Prohibited, 7
prohibited, 3, 6, 15, 17
prohibiting, 14
prohibition, 17
prohibitions, 13
pronounced, 17
pronouncing, 8
proof, 12
protected, 5-6, 11, 16-17

## ■ Index

protection, 17
protections, 17
protestor, 14
prove, 15
provides, 18
provision, 14
purchased, 11
purposes, 14

resident, 5
residents, 5, 10, 15
respectfully, 11, 13, 24
restrictions, 16
retail, 5
reversed, 14
revert, 17
review, 15
reviewing, 18
revisit, 6, 15
ridiculous, 24
rights, 5, 11, 15, 18, 23-24
risk, 11
rolls, 24
ruled, 17

# Q

quote, 14

# R

Rational, 20
rational, 9, 19
re, 3, 5-6, 8-9, 19, 21
reasonably, 13
reasoned, 12
recall, 7
received, 3, 20
recipient, 13-14
recipients, 14
recording, 25-26
regarding, 10, 12, 16
regulate, 13, 16-17
regulation, 9, 15-18
Regulations, 12, 18-19
regulations, 15-16, 18
related, 16
relative, 26
remedy, 4
removed, 3, 21
renders, 13
renew, 6
representation, 19
requested, 4
requesting, 4
required, 5
requires, 9, 19

# S

said, 14, 18, 26
saw, 18
saying, 8
says, 5, 9
scrutiny, 9, 15, 17-20
SE, 2
search, 11
seeks, 11
seemed, 4
seems, 4, 8, 10
seen, 13
seize, 12
sends, 4
sent, 3
settled, 13
Shelby, 23
SHIELDS, 2-4, 9-10, 20-22
Shields, 20
showed, 19
signage, 10
Signed, 11
Signs, 7
signs, 3, 17
silly, 4
simply, 13-14, 19
sits, 7
situation, 9, 11
Slightly, 6

## ■ Index

slippery, 16
solve, 11
Sounds, 4
source, 10
speech, 8-9, 11-13, 16-20
speeding, 5
spotlight, 10
spree, 17
standards, 3
starts, 24
stated, 18
States, 15
stations, 24
Strict, 9
strict, 9, 15, 17-20
strikes, 7
struck, 13
subjected, 13
substantial, 14
sufficient, 20
Supreme, 12-15, 18
survive, 15
sworn, 3

## T

tailored, 9, 15, 18
taken, 24
talked, 11
talking, 9
tantamount, 5
TENNESSEE, 1, 26
Tennessee, 8, 14-16
tests, 18
th, 16, 19-22
Thanks, 11
theater, 14
things, 5, 8, 19, 23
thrust, 14
ticket, 5, 24
Timothy, 14
told, 4
tolerate, 24
took, 4
towards, 19
Transcribed, 1-26

transcribed, 26
Transcriber, 26
transcript, 26
transferring, 14
trend, 11
truck, 18
truly, 9-10
trying, 7, 20
turning, 13
turns, 17
types, 10
typically, 13
tyranny, 24

## U

Uh, 5, 7
umpire, 7
Uncovered, 22
uncovered, 21
understanding, 10
Understood, 6
unintelligible, 3, 20
United, 15
unlawful, 17
unpopular, 12
unquote, 14
unsuspecting, 14
unwilling, 14
used, 7, 16
using, 14
utilities, 14
utilizing, 13

## V

vague, 9, 19
ve, 8
versus, 8, 12-14, 17
via, 16
viewer, 14

viii

 **Index**

viewers, 14, 17
views, 12
violate, 11, 17, 23-24
violated, 16
violates, 18
violating, 5, 11, 15
Violation, 1
violation, 6, 10-11, 15-17, 22-24
violations, 12
visible, 14
visitor, 3
vulgar, 3, 15, 20
vulgarity, 12

# W

wanted, 4
wants, 24
warn, 23
warned, 12
warning, 5, 20-21
Warnings, 5
warnings, 5
was, 3-5, 9, 13-14, 19-23
wastebasket, 14
wearing, 14
were, 5, 11, 14, 21, 23, 26
words, 12, 17
works, 23
writing, 10-11
written, 7, 13

# Y

yard, 3, 10, 18
Yeah, 4
years, 24